## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

MICHAEL LEE MARSHALL v. MALCOLM J. CUNDIFF.

March 8, 1971.

Record No. 7299.

Present, All the Justices.

*Robert J. Rogers* (*Woods, Rogers, Muse, Walker & Thornton,* on brief), for plaintiff in error.

*J. Albert Ellett* (*Nathan B. Hutcherson, Jr.; Copenhaver, Ellett & Lawrence; Hutcherson & Rhodes,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

The question for determination is whether the trial court erred in setting aside as contrary to the law and evidence a jury verdict for Michael Lee Marshall, the defendant, upholding the validity of a release executed by the plaintiff, Malcolm J. Cundiff.

Cundiff filed a motion for judgment seeking damages for personal injuries allegedly sustained when automobiles which he and Marshall were operating collided on September 4, 1964. Marshall filed a "Special Plea of Release" asserting that the action was barred by a general release executed by Cundiff for valuable consideration. By answer to the special plea Cundiff alleged that when the release was executed it was not known that he had suffered any personal injuries, hence the release was executed without consideration and under mutual mistake and was invalid. Our review is limited to the evidence adduced at the separate trial had upon the issue of mutual mistake.

Marshall called Cundiff as an adverse witness, introduced the executed release[1] into evidence, and then rested.

Cundiff's evidence as to the events leading to execution of the release consisted largely of his own testimony. After the accident his wife and daughter, who had been in the car with him, were taken to a hospital for examination and treatment. Cundiff, unaware of any injury to himself, remained at the scene to have his automobile moved.

Ten days later Cundiff, having asked his claim adjuster for the name of Marshall's adjuster, was referred to Algie Martin, of Nationwide Mutual Insurance Company. Cundiff made an appointment with Martin for the next day, September 15, 1964.

When Cundiff went to Martin's office he took two estimates for repairing his automobile, each dated September 12, 1964, the lower in the sum of $272.12, and a statement for $7.50 for examination and treatment of his wife. These had not been requested by Martin.

Cundiff testified that Martin took from him a recorded statement about the accident, and then filled in a release form for $279.62, the exact total of the lower repair estimate and the medical bill. Cundiff was told that he and his wife would have to sign the release before he could receive payment "for fixing the automobile." He signed it in Martin's office before a witness and took the release home where his wife signed it. The next day he returned the executed release and accepted the company voucher for $279.62, payable to himself and his wife, which was deposited in the bank.

A week or so later Cundiff began to suffer pain in his back which doctors subsequently concluded had resulted from his automobile accident. Thereafter, he received treatment and incurred substan-

---

[1] See pages 676-77.

tial medical expenses and loss of wages over an extended period of time.

Cundiff insisted that he intended to settle with Martin only for the car repairs and his wife's medical bill. He said that he and Martin discussed neither his unknown injuries nor the fact that the release provided that it applied to such injuries. Although he knew the release stated that it covered injury claims as well as property damage claims for himself and his wife when he signed it, he was not aware of other claims.

There is no suggestion of fraud, misrepresentation, duress or over-reaching by Martin. Cundiff, who had a seventh grade education, admitted that he took the initiative in settling his claim and that he "glanced over" the release but did not read it "word for word" during the period of about 24 hours that it was in his possession.

As Martin was not called as a witness by either party the only other evidence concerning the release was Mrs. Cundiff's testimony that she "glanced over it" when her husband brought it home for her to sign.

Two of the many doctors consulted by Cundiff described in detail his physical disabilities and the treatments and procedures prescribed therefor but the court, over his objection, excluded from the jury evidence as to the amounts of his medical expenses and loss of wages. No cross-error has been assigned, however, to the exclusion of this evidence.

At the conclusion of the evidence Marshall and Cundiff each moved the court to strike the other's evidence and enter summary judgment for the moving party. The court overruled these motions and submitted to the jury, under instructions which are not now challenged, the question of mutual mistake in execution of the release.

The jury returned the following verdict:

"We, the Jury, find that the contract dated September 15, 1964, is a valid contract, and we find a verdict in favor of Michael Lee Marshall."

On Cundiff's motion this verdict was set aside as contrary to the law and evidence. His personal injury action was subsequently tried on the merits before another jury, resulting in a verdict for Cundiff for $17,000 upon which judgment was entered.

Marshall argues that either the evidence showed as a matter of law that the release was valid or it created an issue of fact which the

# RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment to me/us of the sum of $..... 275.65 ...................................... Dollars, and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge ................................................................................................

and any and all other persons, firms and corporations, whether herein named or referred to or not, of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses, compensation, and all consequential damage on account of, or in any way growing out of, any and all known and unknown personal injuries and death and property damage resulting or to result from accident that occurred on or about the ................................. day of ............, 19...., at or near ................................................................

I/we hereby declare and represent that the injuries sustained may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby re- leased by whom liability is expressly denied.

It is agreed that distribution of the above sum shall be made as follows: ....................................................

....................................................................................................
....................................................................................................
....................................................................................................

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

WITNESS.......................hand and seal this.......15th....day of.....Sept............., 19...6.4..

IN THE PRESENCE OF

CAUTION! READ BEFORE SIGNING

Name.................................................. )
Address ............................................. )
Name.................................................. )
Address ............................................. )

....................................................... (SEAL)

....................................................... (SEAL)

State of                  ) ss.
County of                )

On this ....................... day of..........................., 19........., before me personally appeared.....................
............................................................................................ to me known to be the person..... described herein, and who executed the foregoing instrument and.......................... acknowledged that.....................
................ voluntarily executed the same.

**DEFENDANT/EXHIBIT** A

Filed:_____  2/6/68

My term expires ......................................

Auto 615-D

jury resolved in his favor. Cundiff, of course, maintains that the court correctly held as a matter of law that the evidence showed a mutual mistake of fact invalidating the release. Further, he says that validity of the release is an equity matter for determination by the court rather than by a jury. But no timely objection was made to the procedure, so there is no merit in this argument.

Cundiff relies on *Ice Company* v. *Lee*, 199 Va. 243, 99 S. E. 2d 721 (1957) as authority for his position that the release is no bar to his action for after-discovered injuries.

There, in a suit for specific performance of a release of claims, including "injuries known and unknown", both the releasor and the insurer's attorney testified that settlement was made only for the expense of two medical examinations by the releasor's physician and loss of earnings on the assumption that there were no personal injuries. Subsequently it was found that his physician had erred and that the releasor had suffered serious injuries. We affirmed the holding of the Chancellor that, as the parties had intended the release to cover only known out of pocket expenses, not unknown injuries, it had been executed under mutual mistake and would not be enforced to defeat a personal injury action.

■ The conclusion reached in *Ice Company* v. *Lee* follows principles which we believe to be sound. Thus, even if a release expressly includes "unknown injuries", such language is not conclusive and the agreement may be vitiated for mutual mistake. But where the parties intentionally settle for unknown injuries there is no mutual mistake and whether they intended to release such injuries is usually a question of fact. *Aronovitch* v. *Levy*, 238 Minn. 237, 56 N. W. 2d 570 (1953); *Doyle* v. *Teasdale*, 263 Wis. 328, 57 N. W. 2d 381 (1953).

While there must be mutual intent that the release not cover unknown injuries in order for the mutual mistake rule to apply, many courts have, in effect, made the releasor's intent alone the determining factor. 44 Va. L. Rev. 116, 119-120 (1958). *See Atlantic Greyhound Lines, Inc.* v. *Metz*, 70 F. 2d 166 (4th Cir. 1934). We do not approve this modification of the rule. Moreover, in Virginia, the burden is on the releasor to show that his release should be set aside for mutual mistake by "clear, cogent and convincing evidence." *Ice Company* v. *Lee, supra*, 199 Va. at 251, 99 S. E. 2d at 727. *See* Annot., 71 A. L. R. 2d 82, 172.

■ Though the evidence shows that neither Cundiff nor Martin knew that Cundiff had been injured, mutual mistake in executing the release does not necessarily follow. They may have bargained

from mutual ignorance rather than from mutual mistake, intending that the compensation cover the unknown injuries specified in the release so that Cundiff would assume the risk that there were such injuries. 44 Va. L. Rev. 1361, 1363-1364 (1958).

The jury were instructed to determine the intent of the parties. Instruction No. 1 provided that if they found that it was "mutually agreed and understood" that the compensation specified in the release should apply to all present and future injuries, even though it was unknown that any injuries existed, they were to find for Marshall. If, however, they found that "it was not the mutual intention of the parties that the release should apply" to unknown but subsequently discovered injuries they were to find for Cundiff. The burden of proof by a "preponderance of the evidence" was placed on Cundiff.

This instruction presented Cundiff's position more favorably than he was entitled to have it put. The language could be construed to permit the jury to avoid the release if they found that Cundiff alone did not intend it to apply to unknown injuries. Moreover, proof by "clear, cogent and convincing evidence" was not required by the instruction. Nevertheless, a verdict was returned for Marshall. So the jury, as was their prerogative, either disbelieved Cundiff or concluded that he had failed to carry his burden of proof.

We cannot say as a matter of law that the first verdict was plainly wrong or without evidence to support it. We conclude that the trial court erred in setting it aside and ordering a trial of the personal injury action on its merits. The verdict finding that the release was valid will be reinstated and judgment is now entered thereon in favor of Marshall. All proceedings subsequent to the first verdict are annulled. *Walrod* v. *Matthews*, 210 Va. 382, 171 S. E. 2d 180 (1969).

*Reversed and final judgment.*